UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBIA MABEL MORALES-ALFARO<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.<br><br>Defendants. | Case No.: 20cv82-LAB (BGS)<br><br>**ORDER GRANTING IN PART MOTIONS TO DISMISS**<br><br>**[DOCKET NUMBERS 38, 39.]** |

    Plaintiff Rubia Mabel Morales-Alfaro, who is represented by counsel, filed her complaint challenging conditions of her confinement at the ICE Otay Mesa detention facility.  The Court screened and dismissed the complaint for failure to invoke the Court's jurisdiction. (Docket no. 3.) After other proceedings, Plaintiff then filed her Third Amended Complaint. Defendants CoreCivic, Inc. and the U.S. Department of Homeland Security (DHS) filed motions to dismiss under Fed. R. Civ. P. 12(b)(1) and (6). (Docket nos. 38 and 39, respectively.) CoreCivic's motion alternatively asks the Court to strike certain allegations, under Fed. R. Civ. P. 12(f). The jurisdictional attacks under Rule 12(b)(1) are facial; they are based on the pleadings and do not rely on outside evidence. *See Safe Air for Everyone v. Meyer*,

373 F.3d 1035, 1039 (9th Cir. 2004) (distinguishing between facial and factual attacks on jurisdiction). The motions are now fully briefed and ready for disposition.

**Background**

Morales-Alfaro, a Salvadoran national, traveled to the United States to seek asylum. While traveling, she learned she was pregnant. In late 2017, U.S. Customs and Border Patrol apprehended her. While in custody at Otay Mesa, she suffered a miscarriage, which she attributes to denial of access to medical and other prenatal care and to the conditions of her confinement. She alleges other mistreatment, and argues that conditions in the facility are punitive. She has since been released on bond while awaiting adjudication of her asylum claim, and is living in Little Rock, Arkansas.

**Jurisdiction: Equitable Relief**

CoreCivic moves to dismiss claims 1, 2, 3, and 5 as moot. The government seeks dismissal of all non-FTCA claims including claim 4 (for violations of the Administrative Procedures Act), citing both lack of standing and mootness. Claims 6 through 11 seek damages, and the mootness doctrine does not apply to them. *See Wilson v. Nevada*, 666 F.2d 378, 380–81 (9th Cir. 1982). Claim 5 (for violation of the Rehabilitation Act) seeks declaratory and injunctive relief against both Defendants, and damages against CoreCivic, so the mootness doctrine applies only to this claim to the extent it seeks declaratory or injunctive relief.

Morales-Alfaro seeks equitable relief intended to protect her from the same kind of harm she suffered before.[1] Even if Defendants had not raised the issue of mootness, the Court would be required to raise it *sua sponte*. *See Steel Co. v. Citizens for Better Env't.*, 523 U.S. 83, 94–95 (1998). The Court is presumed to lack jurisdiction, and the burden always falls on the party invoking it—in this case,

---

[1] The TAC's prayer for relief mentions only injunctive relief, though the body of the TAC (¶¶ 32–33) mentions declaratory relief as well.

Morales-Alfaro. *See Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375 (1994).

The Court's first screening order (Docket no. 3), in connection with her request for injunctive relief, noted her release on bond, and pointed out that she had not alleged facts showing she was reasonably likely to be returned to any detention center, much less one operated by CoreCivic.[2] She also failed to allege facts suggesting she was reasonably likely to be in need of medical care while in such a facility. She was not representing others in a class action, nor could she do so. The Court cited well-established precedent that a prisoner's release from custody generally moots claims for injunctive relief based on prison conditions, unless a class action has been certified. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). Even transfer to another facility moots a claim for injunctive relief based on conditions of confinement, unless there is evidence showing a likelihood the plaintiff will be transferred back. *See Prieser v. Newkirk*, 422 U.S. 395, 402–03 (1975).

Morales-Alfaro points to her allegations (TAC, ¶¶ 9–11) to support her contention that it is likely she will benefit from injunctive relief. Those allegations say that only 38 percent of asylum applications were granted in 2018, and that if her application is denied, "she could be subject to immigration detention and deportation," pending appeal. The strength of her claim to asylum is unknown, so even assuming the 38 percent figure is still applicable, the likelihood of her application being denied could be greater or less than 38 percent. But assuming

---

[2] To the extent an injunction is aimed at CoreCivic, it would have no effect on other private companies who operate detention facilities, and who are not parties to this action.  *See Zepeda v. United States Immigration Serv*., 753 F.2d 719, 727 (9th Cir. 1985) (holding that federal courts may not enjoin parties it lacks personal jurisdiction over, nor attempt to determine the rights of persons not before the court).

it is denied, an allegation that she "could be subject to immigration detention" does not adequately show any likelihood or reasonable expectation that she would. Binding precedents such as *Dilley* and *Prieser* make clear that "could be" is not enough to stave off mootness once a prisoner is moved out of the facility where the allegedly offending conditions prevail — whether by release or transfer. Furthermore, even if she were taken into custody, it is unclear why she believes she would be returned to the same facility or even another CoreCivic-operated facility with like conditions.

A good deal of Morales-Alfaro's predictions about what is likely to happen to her are based on policies under the Trump administration, and her allegations that the administration imposed the policies she complains of on the basis of President Trump's own animus against people from Central America. The decision in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018) implies, if not outright holds, that such rhetoric is generally not a reliable indicator of government intent. *See id.* at 2435–40 (Sotomayor, J., dissenting) (recounting at length the history of President Trump's remarks about Muslims and immigration, and arguing that the majority should have considered it). She also points to Executive Order 13768 (Jan. 25, 2017) as the basis for the United States Immigration and Customs Enforcement (ICE's) policy of detaining pregnant women. But because President Biden rescinded that order soon after his inauguration, any persuasive force it might have brought to this analysis is blunted.

The fact that claims for injunctive relief are moot does not necessarily mean claims for declaratory relief are moot. *See Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007). Nevertheless, the Court has no jurisdiction to entertain a claim for declaratory relief to address past violations without affording any remedy for continuing or future violations. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017). Furthermore, Morales-Alfaro's opposition

/ / /

does not mention declaratory relief or explain why it would be available even if injunctive relief is moot.

The Court holds that it lacks jurisdiction over Morales-Alfaro's claims 1 through 4, and claim 5 to the extent it seeks declaratory and injunctive relief. The Court need not, and cannot reach the merits.

**Legal Standards for Rule 12(b)(6) Motion**

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.,* 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). The task of pleading her claims falls to the Plaintiff, however; the Court will not supply facts she has not pled. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**Tort Claims: United States**

With respect to the tort claims (claims 6, 10, and 11) against DHS, the government argues that claims against it fall within two exceptions to the FTCA's waiver of sovereign immunity: the discretionary function and independent contractor exception. Morales-Alfaro bears the burden of establishing subject matter jurisdiction under the FTCA's general waiver of immunity, but the United States bears the burden of proving the applicability of exceptions to the FTCA. *Senger v. United States*, 103 F.3d 1437, 1444 (9th Cir. 1996).

The TAC is ambiguous regarding the United States' status as a Defendant. FTCA claims can only be brought against the United States, not against federal officers or agencies. *Allen v. Veteran's Administration*, 749 F.2d 1386, 1388 (9th Cir. 1984). The FAC's caption lists DHS, not the United States, as a Defendant. However, the body of the complaint alleges that the United States is a Defendant. Because the defect can easily be corrected by amendment, the Court need not address it in this Order.

The TAC brings claims for negligence (claim 6), negligent infliction of emotional distress (claim 10), and negligent supervision of DHS employees (claim 11) against DHS. The basis for claims 6 and 10 is that the government allegedly knew about CoreCivic's incompetence and poor management of the facility and failed to do anything to correct it, and that the United States was negligent in entering into contracts with CoreCivic. (TAC, ¶¶ 235–37, 242, 259–64.) These claims against the United States all arise under the FTCA, and are governed by its standards.

**Independent Contractor Exception**

It is undisputed that CoreCivic is an independent contractor. In most cases, that would mean that the United States cannot be liable under the FTCA, and the Court would lack jurisdiction over such claims. *See Edison v. United States*, 822 F.3d 510, 514, 517–18 (9th Cir. 2016). However, the exception does not bar claims arising from a duty of care the United States could not or did not delegate. *See id*. at 514. In other words, even if an independent contractor is involved, the United States can still be held directly liable for its own negligence. *Id*. at 518. Morales does not dispute that the United States is not vicariously liable for CoreCivic's actions or inaction. Rather, she argues the United States has retained management authority over the detention facility, and is therefore directly liable to her.

///

*Edison* is instructive here. In that case, the Ninth Circuit addressed claims arising from an outbreak of coccidioidomycosis, where the United States knew about the outbreak and allegedly failed to respond properly to protect prisoners. Relying on the duties of landowners and jailers[3] under California law, the panel held that the government had a duty to protect prisoners in its charge from foreseeable harm. Because the government knew of a danger to prisoners and retained power to take action (*i.e.*, by formulating a policy responding to the danger, or modifying prison facilities), its failure to take action violated its own duty. Specifically, the panel held that although the government had delegated day-to-day prison operations to a contractor, it had its "own duty to protect prisoners under California law." 822 F.3d at 521–22.

The TAC alleges in sweeping terms that the government knew pregnant detainees were in danger, knew CoreCivic was not responding adequately to the problem, and had authority to correct the situation. As noted, the government's motion represents a facial attack; thus, no evidence for or against any of these allegations is before the Court, and none is properly considered at this stage of litigation.

**Discretionary Function Exception**

*Edison* did not address the discretionary function exception. 822 F.3d at 522–23 n.9 (noting that the government had not invoked that exception, and that

---

[3] Presumably this duty is the duty of private persons charged with the custody of prisoner, *e.g.*, the operators of private prisons. *See United States v. Olson*, 546 U.S. 43, 45–46 (2005) (holding that liability under the FTCA is limited to liability that a private individual would face under analogous circumstances). To the extent the government's obligations exceed those of private prison operators, the government can be liable only to the extent a private person would be. *See United Scottish Ins. Co. v. United States*, 614 F.2d 188, 192 (9th Cir. 1979) (in FTCA action, holding that violation of FAA regulations that applied only to the government should not be treated as amounting to negligence *per se*).

the panel was not reaching that issue). Nor was it discussed or even mentioned in another leading case Morales-Alfaro cites, *Yanez v. United States*, 63 F.3d 870 (9th Cir. 1995). But it has been squarely raised here.

Under 28 U.S.C. § 2680(a), the United States is not liable under the FTCA for acts that are discretionary in nature, *i.e.*, those that involve judgment or choice and are based on considerations of public policy. *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). To survive a motion to dismiss on the basis of this exception, a plaintiff must allege facts sufficient to support a finding that the challenged actions cannot be said to be grounded in public policy. *Id*. at 324–25. The government need not subjectively be exercising its discretion; it is enough if the actions taken are susceptible to policy analysis. *Id*. at 325.

As alleged in the TAC, the government retains authority over CoreCivic in its operation of the Otay Mesa detention facility. That being said, the government's authority is fairly high-level. The government has the authority to enter into contracts, to require its contractors to maintain certain standards, to inspect facilities, and to take steps to ensure compliance with contracts. The TAC does not identify any relevant non-discretionary directives that DHS must follow, however. Accepting the TAC's allegations as true, the government knew there were problems of the kind that might be expected to harm a detainee like Morales-Alfaro. Nevertheless, the best way to address those problems, while balancing other public policy considerations such as cost and security, involves policy decisions. *See, e.g., Alfrey v. United States*, 276 F.3d 557, 564–65 (9th Cir. 2002) (Bureau of Prisons' determination about how to respond to threat to inmate was subject to the discretionary function exception).

The decision to contract out to CoreCivic the function of operating the detention facility was discretionary. *See Marlys Bear Medicine v. U.S. ex rel. Secretary of Dept. of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001) (government's decision to contract out timber functions fell within discretionary function

exception). Negligent supervision or failure to supervise — even if wrongful — also falls within the exception. *See Nanouk v. United States*, 974 F.3d 941, 946 (9th Cir. 2020) (Air Force personnel's failure to supervise contractors' disposal of hazardous chemical waste fell within the exception); *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (failure to supervise employees fell within the exception). While Morales-Alfaro argues that the government's action or inaction was "outside the bounds of its discretion," this is in fact an argument based on failure to perform a discretionary function or abuse of discretion, both of which are specifically precluded by 28 U.S.C. § 2680(a).

The only non-discretionary duties on the government's part that the TAC points to pertain to reporting and record-keeping. While violation of these directives might amount to general malfeasance, it is not alleged to have caused Morales-Alfaro's injury. Neither the TAC nor Morales-Alfaro's briefing has not pointed to any directive that would have stripped DHS of its discretion and created the kind of specific directive her claims depend on. *See Nanouk*, 974 F.3d at 946 (holding that "absence of a mandatory and specific directive" prevented plaintiff from prevailing). To the contrary, she alleges that the lax enforcement of contractual requirements requiring contractors to provide access to health care and treat detainees better is consistent with government policy. (TAC, ¶¶ 71, 84, 149–50, 216.) Recommended changes that would have mandated closer oversight by DHS were not adopted. (*Id.*, ¶ 94.) While the TAC alleges that DHS and ICE are "responsible for conducting inspections to ensure compliance" with DHS standards and applicable law (*id.*, ¶ 96), it does not allege that DHS or ICE has a non-discretionary duty to do so. Furthermore, the TAC makes clear that ICE contracts with inspectors to monitor and enforce CoreCivic's compliance. (TAC, ¶ 95.) This adds yet another layer of "independent contractor" and "discretionary function" analysis.

/ / /

/ / /

**ICE Health Services Corps**

The TAC alleges that health care at the Otay Mesa detention center is provided by ICE Health Services Corps personnel, and Morales-Alfaro apparently believes they acted negligently in carrying out their duties. "Ordinary occupational or professional judgments are not protected by the discretionary-function exception." *Alfrey*, 276 F.3d at 566 (citation omitted). Nevertheless, the TAC includes only sparse allegations against ICE Health Services personnel, and no one she interacted with is clearly identified as an ICE or DHS employee. (*See* TAC, ¶ 68 (alleging that pregnant detainees are taken outside the detention facility for their medical visits).)

The TAC alleges Morales-Alfaro had an intake interview with a nurse on December 24, 2017,[4] where she said she was pregnant and felt very bad, notified the nurse that she had had a recent miscarriage, and said she thought she needed iron pills and vitamins. (TAC, ¶ 171). While the TAC says the diet she was provided was nutritionally deficient, it implies that this was CoreCivic's responsibility, not that of ICE personnel. The TAC alleges that, after being delayed by CoreCivic guards, she was allowed a visit to the nurse on January 2, 2018 when she reported bleeding and pain, and was given Tylenol. (*Id*., ¶ 178.) Her remaining interactions with medical personnel were with the doctor who determined that the baby was not viable, and one or more unidentified people who transported her to the hospital. (*Id*., ¶ 184.) The TAC alleges that she was placed in restraints in violation of ICE policies, but does not say who did that. (*Id*., ¶ 186.) The TAC contends that had medical care not been delayed, she would not have suffered the miscarriage. (*Id*., ¶ 185.)

---

[4] The TAC says 2018, but this appears to be scrivener's error. (*See* TAC, ¶ 6 (alleging that Morales-Alfaro was detained from December 25, 2017 to March 1, 2018).)

Even if the nurses and doctor were ICE Health Services Corps personnel, most of these allegations concern CoreCivic personnel. The TAC alleges that CoreCivic guards — not nurses, the doctor, or ICE personnel — denied her repeated requests for medical care, refused to provide her with sanitary supplies, and would not allow her to see the nurse. (*Id.*, ¶¶ 172–76, 180–82.)[5] While it identifies policies requiring that pregnant detainees be given access to prenatal care and, if identified as high risk, referred to a physician. (*Id.*, ¶¶ 73–74.) However, the TAC appears to place the blame for non-compliance with this policy on CoreCivic guards, rather than ICE personnel.

In her opposition brief, Morales-Alfaro argues that the second nurse was an ICE employee. New allegations in opposition to a Rule 12(b)(6) motion to dismiss may be considered when deciding whether to grant leave to amend, but are not considered when ruling on the motion itself. *See Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). While the TAC does not adequately plead a medical malpractice claim, it appears Morales-Alfaro intends to raise one. She will therefore be permitted to amend to add allegations supporting such a claim, if she so chooses.

**Other Allegations**

The TAC in passing alleges a conspiracy to violate civil rights. (TAC, ¶ 4.) However, this is unsupported by any factual allegations. For the first time in her opposition, Morales-Alfaro alleges "Physical violence by DHS employees." (Docket no. 45 at 16:15–16.)  However, the allegations she cites refer to healthcare and sanitary supplies, not violence.

---

[5] Paragraph 179 alleges that "Rosenblatt" gave her no sanitary supplies, but the TAC is silent as to who Rosenblatt was, or what the circumstances were. For example, it does not say that Rosenblatt had sanitary supplies to give, or why it was Rosenblatt's duty to provide them.

**Rehabilitation Act Damages Claim**

CoreCivic's motion points out that the TAC does not allege that it receives financial assistance from the federal government, so as to bring it within the Rehabilitation Act's coverage. CoreCivic in response argues that receiving contractual payments is enough.

While CoreCivic receives compensation under contracts, such payments do not constitute "federal financial assistance" for purposes of § 794 unless they involve a subsidy. *See Hingson v. Pac. Southwest Airlines*, 743 F.2d 1408, 1414 (9th Cir. 1984). *See also Kimiko v. Alta Calif. Regional Ctr.*, 2020 WL 6146451, slip op. at *3 (E.D. Cal., Oct. 20, 2020) (citing *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1209 (9th Cir. 1984) (holding that "federal financial assistance" for purposes of Rehabilitation Act does not include compensatory payment for services).

Unless Morales-Alfaro can allege that CoreCivic receives federal financial assistance, she cannot bring a Rehabilitation Act claim against it. *See id.* (dismissing Rehabilitation Act claim).

**Tort Claims: CoreCivic**

CoreCivic argues that the negligence claims are inadequately pled, and that derivative claims for negligent infliction of emotional distress, negligent supervision, and *respondeat superior* liability should be dismissed as well.

The TAC adequately alleges a number of deprivations that do not appear to be required by federal policy — or in some cases are prohibited by federal policy — and that could cause both the miscarriage and other harm Morales-Alfaro alleges. For example, the TAC alleges CoreCivic's guards ignored her repeated requests for medical care for a week, and that if she had been allowed to see a doctor earlier, the miscarriage likely would not have happened. (TAC, ¶¶ 182–185.) The TAC alleges that she was provide a non-nutritious diet inappropriate for a pregnant woman, was forced to try to sleep in the cold without a blanket or

adequate coverings, and was denied necessary feminine hygiene products (*Id.*, ¶¶ 2, 131, 187, 207, 219.).) The TAC identifies these practices as violating federal policy. (*Id.*, ¶¶ 73–75.) It also alleges that on the day of her miscarriage Morales-Alfaro was shackled or placed in restraints while being transported to and from the hospital, in violation of federal policy. (*Id.*, ¶ 184–86.)

Given the TAC's ample allegations that CoreCivic consistently engaged in harmful practices throughout the entire detention center over a long period of time, including practices in violation of specific federal policies, the TAC has adequately alleged a basis for punitive damages.

Certain other restrictions, *e.g.*, that she was required to wear prison garb, not given fresh fruits and vegetables to eat, and given only a few hours of time outdoors each day, likely do not amount to negligence. But because the TAC alleges enough practices to establish a claim of negligence, CoreCivic's arguments as to the tort claims must fail.

**Motions to Strike**

The allegations Defendants ask the Court to strike are not all strictly necessary. Nevertheless, allegations about how another detainee was treated months earlier, and other allegations suggesting deliberate oppression are germane to the claim for punitive damages.

Obviously, some of the allegations are no longer necessary after this Order, and Morales-Alfaro should omit those. Nevertheless, the Court finds no reason to strike allegations at this time.

**Conclusion and Order**

The motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**.

All claims for injunctive and declaratory relief are **DENIED AS MOOT**. This includes the Rehabilitation Act claim, to the extent it seeks declaratory and injunctive relief. To the extent it seeks damages against CoreCivic, the

/ / /

Rehabilitation Act claim is not moot, but nevertheless fails to state a claim and is **DISMISSED WITHOUT PREJUDICE**.

FTCA claims against the United States are subject to the discretionary function exception, and are **DISMISSED WITHOUT LEAVE TO AMEND** for that reason.

While Morales-Alfaro might be able to bring medical negligence claims against the government, she has not done so in the TAC. Nevertheless, she is not precluded from raising such a claim in her fourth amended complaint.

CoreCivic's motion to dismiss the tort claims against it is **DENIED**. The requests to strike are also **DENIED**.

No later than **21 calendar days from the date this order is entered**, Morales-Alfaro shall file a fourth amended complaint, omitting all claims denied as moot, and all tort claims against DHS or the United States that she included in the TAC. She is not precluded from adding medical malpractice claims against the United States.

The complaint should correct pleading defects that have been pointed out. It should also omit allegations rendered unnecessary or inapposite by this Order.

**IT IS SO ORDERED**.

Dated: March 17, 2021

Honorable Larry Alan Burns
United States District Judge